# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br><br>vs.<br><br>LAWRENCE R. QUIGNON,<br><br>                 Defendant. | 8:18CR43<br><br>ORDER OF RESTITUTION |

This matter is before the Court on the Motion Requesting Order of Restitution, ECF No. 32, filed by the Government. The Government requests that the Court order restitution in the amount of $1,000.00 to the victim of the "Tara" series. Defendant Lawrence R. Quignon filed a brief in response, ECF No. 37. For the reasons stated below, the Government's request will be granted.

## BACKGROUND

Quignon pled guilty to distribution of child pornography, a violation of 18 U.S.C. § 2252(a)(2) and (b). Quignon admitted that he used the anonymous chat service Chatstep to upload 17 images of minors engaging in sexually explicit conduct. One of the images is part of the known series "Tara." The Government has sought restitution on behalf of the victim in the Tara series in the collective amount of $37,008.78. The victim has been reimbursed a total of $18,872.78 from defendants in other cases. ECF No. 32-1, Page ID 108. The victim seeks additional reimbursement for continued counseling sessions and various safety measures. *See* Victim Impact Statements, ECF No. 32-1, Page ID 106-07. Although the victim is no longer a minor, the victim and her mother assert that they continue to receive threats and unwanted communications.

The Government represented that, according to a database kept at the Department of Justice's Child Exploitation and Obscenity Section, the average amount of restitution, nationwide, that has been awarded to the victim of the Tara series between May through October 2018 is roughly $1,350 dollars. Quignon argues that the Government has failed to prove any connection between his wrongful conduct and specific harm to the victim. Quignon also argues that evidence of past expenses is insufficient to prove an appropriate amount of restitution for continued harm.

**DISCUSSION**

Under 18 U.S.C. § 2259, the Court "shall order restitution for any offense under [Chapter 110 of the United States Code]" and "shall direct the defendant to pay the victim . . . the full amount of the victim's losses." 18 U.S.C. § 2259. "The issuance of a restitution order under this section is mandatory." § 2259(b)(4)(A). The "full amount of the victim's losses" includes medical services relating to physical, psychiatric, or psychological care; necessary transportation, temporary housing, and child care expenses; and any other losses suffered by the victim as a proximate result of the offense. *See* § 2259(b)(3). The Court may apportion liability if it finds that more than one defendant has contributed to the victim's loss. 18 U.S.C. § 3664(e), (h).

"Restitution is proper under section 2259 only to the extent that the defendant's offense proximately caused the victim's losses." *United States v. Bordman*, 895 F.3d 1048, 1056 (8th Cir. 2018) (quoting *United States v. Beckmann*, 786 F.3d 672, 682 (8th Cir. 2015)). Courts agree that "even mere possessors of child pornography cause proximate harm to victims of child pornography." *Id.* (citing *Beckmann*, 786 F.3d at 682). But "[t]he harder question in these cases is determining the appropriate amount of

2

restitution—i.e., how much of the victim's losses are attributable to the defendant's conduct." *Id*. (citation omitted). To determine the proper amount of restitution, "a court must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses. This cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment." *Paroline v. United States*, 572 U.S. 434, 459 (2014).

In *Paroline*, the Supreme Court suggested that a district court start with a determination of the amount of the victim's losses caused by the continuing traffic in the victim's images. *Id*. at 459-60. Then, the award of restitution is based on factors "that bear on the relative causal significance of the defendant's conduct in producing those losses." *Id*. The factors courts may consider include:

- the number of past criminal defendants found to have contributed to the victim's general losses;
- reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses;
- any available and reasonably reliable estimate of the broader number of offenders involved (most of whom may never be caught or convicted);
- whether the defendant reproduced or distributed images of the victim;
- whether the defendant had any connection to the initial production of the images;
- how many images of the victim the defendant possessed; and
- other facts relevant to the defendant's relative causal role.

*Id.* at 460. The Government has the burden of proving the amount of the victim's losses by a preponderance of the evidence. 18 U.S.C. § 3664(e), (h); *Bordman*, 895 F.3d at

3

1057. In meeting its burden, "the government 'could also inform district courts of restitution sought and ordered in other cases." *Bordman*, 895 F.3d at 1057 (quoting *Paroline*, 572 U.S. at 462). "[T]he court's task will 'involve discretion and estimation.'" *Id.* (quoting *Paroline*, 572 U.S. at 462).

The Court has considered the *Paroline* factors and concludes that the Government's request for restitution is reasonable. To meet its burden, the Government submitted statements from the victim in the Tara series as well as her mother. The impact statements describe threats the victim continues to receive and generally describe the victim's need for continued counseling. For example, the victim's mother stated that in the last two years, her family has been informed of several thousand cases involving images of the victim. Both the victim and her mother describe several security measures they have taken to deal with the constant potential threat to the victim's safety. Although the victim is no longer a minor, Quignon has contributed to the continued threat to her safety and psychological well-being. *See Osborne v. Ohio*, 495 U.S. 103, 111 (1990) (images cause "continuing harm by haunting the chil[d] in years to come."). It is reasonable to infer that Quignon's actions in uploading the image contributed to the victim's continued losses under § 2259(b)(3).

The Court also concludes that the amount requested is reasonable. The Government provided a description of restitution sought and ordered in other cases involving the Tara series. *See Bordman*, 895 F.3d at 1057 (quoting *Paroline*, 572 U.S. at 462). The Government represented that the average amount of restitution awarded between May through October of 2018 is approximately $1,350 dollars. The Government's request of $1,000 is below this average amount. Although the

4

Government's evidence of loss shows past expenses occurred, the requested amount for future counseling and safety precautions is not unreasonable. The Court has reviewed the record and concludes that the amount is consistent with the requirements of 18 U.S.C. § 2259.

Quignon argues that the Government failed to establish any causal connection to the Quignon. However, the Supreme Court recognized that it is often "not possible to identify a discrete, readily definable incremental loss" caused by a particular defendant. *Paroline*, 572 U.S. at 456-57. For this reason, the "cause of [a] victim's general losses is the trade in her images." *Id.* at 456. Thus, a defendant "that was a part of the overall phenomenon that caused her general losses" is liable for restitution payments. *Id.* at 457.

Quignon nevertheless argues that the Court should reject the Government's request because another district court addressing restitution in the Tara series rejected a request based on what appears to be the same evidence presented in this case. In *United States v. Moody*, No. CR 417-256, 2018 WL 3887506, at *8 (S.D. Ga. Aug. 15, 2018), the court concluded that the Government failed to show a causal link between the victim's claimed unreimbursed loss and the defendant's conduct in receiving and possessing her image. The Government failed to prove causation because the defendant was not arrested until November 2017, but the impact statements were dated March 31, 2017. *Id.* Thus, there was no evidence that the defendant's possession of the images caused the type of harassment that forced the victim from her home. *See id.*

Even if the court's reasoning in *Moody* is correct, this case is distinct in an important way. While the defendant in *Moody* possessed images of the victim, Quignon admitted to distributing them. The victim's impact statement in this case, also dated

March 31, 2017, stated that the victim continues to receive harassment and unwanted communication because individuals continue to distribute the images. Quignon uploaded the image between April 19, 2017, and October 15, 2017. It is reasonable to conclude that Quignon's distribution of the image could contribute to precisely the type of harm described in the victim impact statement. Accordingly, the Government has demonstrated a connection between the victim's losses and Quignon's conduct.

Accordingly,

IT IS ORDERED:

1. The Motion Requesting Order of Restitution, ECF No. 32, filed by the Government, is granted; and
2. Defendant is ordered to pay restitution in the amount of $1,000.00 to the victim of the "Tara" series.

Dated this 27th day of December, 2018.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge